IN THE UNITED STATES DISTRICT COURT
THE WESTERN DISTRICT OF MICHIGAN

ULYSSES ROMAN,              )

                       )

        PLAINTIFF,       )

                       )     CIVIL ACTION NO. _____

     v.                )

                       )

HANGER, INC.,          )     HON.

                       )

        DEFENDANT.   )

                       )

                       )

## **COMPLAINT**

PLAINTIFF, Ulysses Roman, by and through his attorneys, CARLA D. AIKENS, P.L.C., submits the following Complaint against DEFENDANT Hanger, Inc.

## **JURY DEMAND**

COMES NOW PLAINTIFF, Ulysses Roman, and hereby makes his demand for trial by jury.

## **JURISDICTION**

1.    Plaintiff Ulysses Roman is a resident of Traverse City, Michigan at all times relevant to this action.

2.    Defendant Hanger, Inc. is an orthotics and prosthetics company doing

1

business in the State of Michigan.

3.     The events in question took place in Traverse City, Michigan, and arose out of Plaintiff's employment in Michigan. Plaintiff worked as a Patient Access Coordinator IV in Traverse City, Michigan.

4.     This Court has jurisdiction over these claims on the basis of federal question jurisdiction pursuant to the False Claims Act, 31 U.S.C. § 3730(h). 31 U.S.C. § 3730(h) provides that an action under that subsection may be brought in the appropriate district court of the United States.

5.     This Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same employment relationship, protected reporting, investigation, and termination.

## VENUE

6.     Venue is proper in the Western District of Michigan because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Traverse City, Michigan.

## STATEMENT OF FACTS

7.     Plaintiff Ulysses Roman was employed by Defendant from approximately August 2023 through April 15, 2026.

8.     Plaintiff worked for Defendant as a Patient Access Coordinator IV.

9.     Plaintiff was successful in his job and prior to his termination had no prior

2

warnings or misconduct.

10.    During his employment, Plaintiff engaged in protected activity by reporting suspected Medicare and Medicaid billing misconduct.

11.    Plaintiff reported documented Medicare/Medicaid billing misconduct over an 18-month period.

12.    Plaintiff's reports included alleged VOR claim date manipulation and coinsurance waiver violations.

13.    Plaintiff reported his concerns in writing to multiple levels of Defendant's leadership, including a regional vice president.

14.    Plaintiff's reports concerned suspected claims submitted to Medicare and Medicaid and alleged practices involving federally and state-funded healthcare programs.

15.    Plaintiff's protected activity was not limited to generalized workplace complaints; he reported suspected fraudulent healthcare billing practices involving government payors.

16.    On or about August 8, 2024, Plaintiff possessed and reported documentation concerning a coinsurance waiver on an approximately $10,000 Medicare claim.

17.    That email included management-level acknowledgment that the company needed to ensure it was following the law.

18.    Plaintiff's supervisor responded to that email by stating, "I am glad she put it

in writing."

19.    Plaintiff continued reporting suspected billing misconduct after his complaints did not result in corrective action.

20.    On November 18, 2025, Plaintiff self-emailed a 14-tab retaliation defense binder to his personal email.

21.    Plaintiff created that binder in response to what he believed were unremedied fraud and compliance concerns and escalating hostility he was receiving for his reporting.

22.    The binder contained fraud documentation, compliance complaint records, billing misconduct screenshots, and hostile message screenshots.

23.    In November 2025, Defendant's regional director Tyler Melton told two clinicians that Plaintiff would be fired immediately if he "tried to pull the same stuff."

24.    Plaintiff understood the phrase "same stuff" to refer to his continued compliance reporting.

25.    Plaintiff's direct supervisor stated in writing that "they only listen when you talk but they don't like it."

26.    Plaintiff's direct supervisor also wrote, "they have plans for you," which Plaintiff took as plans to terminate him for his reporting.

27.    On or about April 6, 2026, Plaintiff was involved in a workload dispute that

he resolved in writing in approximately nine minutes.

28.    Approximately 15 hours later, Defendant opened an HR investigation.

29.    The stated initial basis for the HR investigation was unauthorized computer access.

30.    Defendant accessed Plaintiff's work computer during the investigation.

31.    Upon information and belief, Defendant discovered his November 2025 retaliation binder when it accessed his computer.

32.    Defendant's investigation then expanded from one allegation to eight allegations without any new complaint, new witnesses, or new evidence.

33.    Plaintiff alleges that the eight allegations mirrored the contents of his retaliation binder.

34.    Plaintiff participated in recorded HR investigation calls on April 7, 2026 and April 10, 2026.

35.    During the April 7, 2026 call, HR acknowledged that certain pay discussions were protected and issued a no-retaliation reminder.

36.    During the April 7, 2026 call, Plaintiff raised a retaliation concern.

37.    Plaintiff was terminated on April 15, 2026.

38.    Defendant allegeded that it terminated Plaintiff for cause and provided no severance, however, did not provide Plaintiff any specific reason at the time of termination.

39.    Plaintiff had no prior disciplinary history before his termination.

40.    After terminating Plaintiff, Defendant submitted only one allegation to the Michigan Unemployment Insurance Agency and did not submit the other seven HR allegations to the Michigan Unemployment Insurance Agency.

41.    On May 8, 2026, the Michigan Unemployment Insurance Agency issued a Notice of Determination and found that Defendant provided no evidence of misconduct and no prior warnings.

42.    Plaintiff also experienced workplace hostility involving racial slurs, sexual orientation slurs, and physical threats directed at him.

43.    Defendant's HR investigator confirmed that the relevant Teams archive contains that hostile workplace evidence.

44.    Defendant failed to take corrective action regarding the hostile workplace evidence, and instead terminated Plaintiff.

45.    Plaintiff suffered economic damages, including lost wages and benefits including 401K employer match, HSA/FSA contributions, and healthcare contribution value.

46.    Plaintiff suffered emotional distress and related medical damages during and after the retaliatory period.

47.    A licensed provider documented anxiety requiring new daily medication in November 2024, and a FNP documented depressive symptoms, hypersomnia, and

night anxiety.

48.   Plaintiff requests relief as described in the Prayer for Relief below.

<u>COUNT I</u>
<strong>Retaliation in Violation of the False Claims Act, 31 U.S.C. § 3730(H)</strong>

49.   Plaintiff Ulysses Roman incorporates by reference all allegations in the preceding paragraphs.

50.   At all material times, Defendant was Plaintiff's employer.

51.   The False Claims Act protects an employee who is discharged, threatened, harassed, or otherwise discriminated against because of lawful acts in furtherance of an FCA action or other efforts to stop violations of the FCA. 31 U.S.C. § 3730(h) protects employees from being "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against" because of lawful acts "in furtherance of an action under this section or other efforts to stop 1 or more violations."

52.   Plaintiff engaged in protected activity by reporting suspected Medicare and Medicaid billing misconduct, including alleged VOR claim date manipulation, false claims, and coinsurance waiver violations.

53.   Defendant knew of Plaintiff's protected activity because Plaintiff made written reports to multiple leadership levels, including the regional leadership.

54.   After Plaintiff engaged in protected activity, Defendant subjected him to retaliatory hostility, an expanding HR investigation, and ultimately termination.

7

55.    Plaintiff's termination occurred because of his protected activity.

56.    Defendant's actions were intentional, willful, malicious, and/or done with reckless disregard of Plaintiff's rights.

57.    As a direct and proximate result of Defendant's unlawful actions, Plaintiff suffered lost wages, lost benefits, emotional distress, humiliation, embarrassment, loss of professional reputation, and other damages.

58.    Plaintiff requests relief as described in the Prayer for Relief below.

## <u>COUNT II</u>
### Retaliation in Violation of the Michigan Whistleblowers' Protection Act, MCL 15.361 Et Seq. ("WPA")

59.    Plaintiff Ulysses Roman incorporates by reference all allegations in the preceding paragraphs.

60.    At all material times, Plaintiff was an employee and Defendant was an employer covered by the WPA.

61.    The WPA prohibits an employer from discharging, threatening, or otherwise discriminating against an employee because the employee reports or is about to report a violation or suspected violation of law to a public body.

62.    MCL 15.362 provides that an employer shall not discharge, threaten, or otherwise discriminate because an employee reports or is about to report a violation or suspected violation of law to a public body.

63.    Plaintiff reported and/or was about to report suspected violations of federal

and Michigan law concerning Medicare and Medicaid billing misconduct.

64.    Plaintiff's reports and anticipated reports concerned suspected violations of law involving false claims and healthcare billing compliance.

65.    Plaintiff reported suspected Medicare/Medicaid billing misconduct, including alleged false claims and coinsurance waiver violations.

66.    Defendant knew or had reason to know of Plaintiff's reports and anticipated reports because Plaintiff reported the misconduct in writing to multiple leadership levels and Defendant terminated Plaintiff only after it found the anti-retaliation email he sent to himself.

67.    Plaintiff made written compliance reports to multiple leadership levels including regional VP.

68.    Defendant took adverse employment action against Plaintiff, including termination.

69.    A causal connection exists between Plaintiff's protected activity and Defendant's adverse actions, including the direct retaliatory statements, retaliatory investigation, and termination.

70.    Defendant's agents repeatedly made retaliatory statements to Plaintiff including "they have plans for you" and "they only listen when you talk but they don't like it," and states a regional director said Plaintiff would be fired if he "tried to pull the same stuff," constituting direct evidence of discrimination.

9

71.    Defendant and its agents' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard of Plaintiff's rights.

72.    As a direct and proximate result of Defendant's actions, Plaintiff suffered lost wages, lost benefits, emotional distress, humiliation, embarrassment, and other damages.

73.    Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT III
### Retaliation in Violation of the Michigan Medicaid False Claim Act, MCL 400.610c

74.    Plaintiff Ulysses Roman incorporates by reference all allegations in the preceding paragraphs.

75.    At all material times, Plaintiff was an employee of Defendant.

76.    Plaintiff engaged in lawful acts protected by MCL 400.610c by investigating, documenting, opposing, and reporting suspected Medicaid billing misconduct.

77.    Plaintiff reported Medicare/Medicaid billing misconduct, including VOR claim date manipulation and coinsurance waiver violations.

78.    Defendant knew of Plaintiff's protected conduct because Plaintiff made written compliance reports to multiple individuals of Defendant's leadership.

79.    Defendant retaliated against Plaintiff after he engaged in protected conduct by subjecting him to a retaliatory HR investigation and terminating his employment.

80.    Defendant and its agents' unlawful actions were intentional, willful,

malicious, and/or done with reckless disregard of Plaintiff's rights.

81. As a direct and proximate result of Defendant's actions, Plaintiff suffered lost wages, lost benefits, emotional distress, humiliation, embarrassment, and other damages.

82. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV
### Wrongful Discharge in Violation of Michigan Public Policy

83. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

84. Michigan law recognizes a public policy wrongful discharge claim where an employee is discharged for conduct protected by well-established public policy.

85. Plaintiff internally reported suspected Medicare and Medicaid billing misconduct to Defendant's leadership in good faith.

86. Plaintiff's reports implicated well-established public policies against fraud on government healthcare programs and against retaliation for employees who report suspected unlawful billing practices.

87. Defendant terminated Plaintiff because of his internal reports and opposition to suspected unlawful billing practices.

88. Plaintiff identifies written and witnessed statements reflecting retaliatory intent, including "They have plans for you," "they only listen when you talk but they don't like it," and the statement that Plaintiff would be fired if he "tried to pull the

11

same stuff."

89.    Plaintiff's termination violated Michigan public policy.

90.    Defendant and its agents' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard of Plaintiff's rights.

91.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff sustained loss of earnings, loss of earning capacity, loss of benefits, emotional distress, humiliation, embarrassment, and loss of professional reputation.

92.    Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT V
### Hostile Work Environment in Violation of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 Et Seq. ("ELCRA")

93.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

94.    At all material times, Defendant was an employer and Plaintiff was an employee covered by the ELCRA.

95.    Plaintiff was subjected to unwelcome communication and conduct based on protected characteristics, including racial slurs and sexual orientation slurs directed at him.

96.    Plaintiff was also subjected to physical threats.

97.    The unwelcome conduct and communications were intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and offensive work environment.

12

98.    Defendant had notice of the hostile workplace conduct because Plaintiff reported them and its HR investigator allegedly confirmed the Teams archive contained the hostile content.

99.    Defendant failed to take prompt and appropriate remedial action after notice of the hostile work environment, and instead terminated Plaintiff.

100.    Defendant and its agents' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard of Plaintiff's rights.

101.    As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff sustained loss of earnings, loss of earning capacity, loss of benefits, emotional distress, humiliation, embarrassment, and loss of professional reputation.

102.    Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VI
### Retaliation in Violation of the Michigan Elliott-Larsen Civil Rights Act ("ELCRA")

103.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

104.    At all material times, Defendant was an employer and Plaintiff was an employee covered by the ELCRA.

105.    Plaintiff opposed and reported hostile workplace conduct involving racial slurs, sexual orientation slurs, and physical threats directed at him.

106.    Defendant knew of Plaintiff's protected activity because HR was aware of the hostile Teams archive and Plaintiff participated in HR investigation calls.

13

107. After Plaintiff engaged in protected activity, Defendant took adverse employment actions against him, including expanding the HR investigation and terminating his employment.

108. Defendant's adverse actions were causally connected to Plaintiff's protected activity.

109. Defendant and its agents' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard of Plaintiff's rights.

110. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered lost wages, lost benefits, emotional distress, humiliation, embarrassment, and other damages.

111. Plaintiff requests relief as described in the Prayer for Relief below.

## RELIEF REQUESTED

PLAINTIFF Ulysses Roman respectfully requests that this Honorable Court enter judgment against Defendant as follows:

a.      A declaration that Defendant's conduct violated Plaintiff's rights under the False Claims Act, the Michigan Whistleblowers' Protection Act, the Michigan Medicaid False Claim Act, Michigan public policy, and the Michigan Elliott-Larsen Civil Rights Act;

b.      Reinstatement to Plaintiff's former position, or to a comparable position, with the same seniority status, benefits, employment rights Plaintiff would have had but for Defendant's unlawful conduct, and restoration of

14

Plaintiff's fringe benefits, seniority rights, retirement benefits, 401(k) benefits, healthcare benefits, HSA/FSA benefits, and all other employment-related benefits, or, in the alternative, front pay;

c.      Back pay, lost wages, lost salary, lost bonuses, lost benefits, lost earning capacity, and all other past economic losses;

d.      Two times the amount of back pay and lost back pay to the extent authorized by the False Claims Act and the Michigan Medicaid False Claim Act;

e.      Interest on back pay, including statutory, pre-judgment, and post-judgment interest as allowed by law;

f.      Front pay, future lost earnings, future lost benefits, and future loss of earning capacity in lieu of reinstatement if reinstatement is not feasible;

g.      Compensation for special damages, actual damages, compensatory damages, pecuniary losses, non-pecuniary losses, and all other make-whole damages permitted by law;

h.      Damages for emotional distress, humiliation, embarrassment, mental anguish, anxiety, depression, loss of enjoyment of life, reputational harm, professional harm, inconvenience, and other injuries caused by Defendant's unlawful conduct;

i.      Damages for loss of professional reputation, loss of career opportunities, and impairment of future employment prospects;

j.      Punitive damages to the extent permitted by applicable law;

k.      Injunctive relief prohibiting Defendant from engaging in further retaliation, discrimination, harassment, hostile work environment conduct, or interference with protected reporting activity;

l.      Equitable relief requiring Defendant to remove, correct, or expunge any

false, retaliatory, or unsupported disciplinary, investigatory, or termination records concerning Plaintiff;

m.      Litigation costs, taxable costs, reasonable attorney fees, expert fees, witness fees, and expenses to the fullest extent permitted by law;

n.      Any other legal, equitable, declaratory, injunctive, make-whole, statutory, or other relief this Court deems just and proper.


Dated:  July 14, 2026                             Respectfully Submitted,

                                                  CARLA D. AIKENS, P.L.C.


                                                  /s/ *Connor B. Gallagher*
                                                  Connor B. Gallagher (P82104)
                                                  Carla D. Aikens (P6950)
                                                  615 Griswold St., Ste. 709
                                                  Detroit, MI 48226
                                                  connor@aikenslawfirm.com
                                                  *Attorneys for Plaintiff*